THE PEOPLE *ex rel.* Empress Farms, Inc., Plaintiff-Appellee, *v.* ROBERT F. SCHNEIDER, Director of Agriculture, *et al.*—(United States Trotting Association, Defendant-Appellant.)

(No. 11205; ■■■■■)

Fourth District—September 3, 1971.

*Rehearing denied October 1, 1971.*

TRAPP, J., dissenting.

Carroll, Paxton & Blomquist, of Chicago, and Carl T. Meyer, of Spring-field, (J. R. Blomquist, of counsel,) for appellant.

Giffin, Winning, Lindner, Newkirk & Cohen, of Springfield, (Herman G. Bodewes, of counsel,) for appellee.

Mr. JUSTICE SMITH delivered the opinion of the court:

The issue in this case is whether or not a horse can win the three-year-old pace at the Illinois State Fair and lose the race in the courtroom. The race carried a purse of $14,883.00. The purse was delivered by the Director of Agriculture to the United States Trotting Association and is held by it. On motion of the Director, the Trotting Association was made a party-defendant to this suit. A protest was filed on the morning of the race and it was reviewed by the Board of Review of the United States Trotting Association and appealed to the Board of Appeals of that Association. The result was a finding that the horse, Chicago King, was not eligible for the race because the respective payments required for eligibility were not paid on time. Empress Farms, the owner of the horse, then filed its *mandamus* suit against the Director of Agriculture for the delivery of the winner's purse. The trial court directed the Trotting Association to return the purse to the Director of Agriculture and directed him to deliver the purse to Empress Farms.

At the very threshold of our inquiry, we appeared to be somewhat restricted and fenced in by the fact that the Director of Agriculture has acquiesced in the decision of the trial court by not joining in this appeal. Further compounding our review is the pleading and procedural anomalies, the diction and contradiction in the pleadings and the legal conclusion pleaded from uncontradicted facts. After meandering at length among them, we have concluded that there is no fence at all and thus we need not discuss whether we go under the fence, over the fence or through it. We conclude that there is no dispute as to material facts but that it is confined to the legal conclusions that necessarily flow from them.

In 1965, the conduct of the Illinois State Fair reposed in the Department of Agriculture and it had the authority "to adopt and promulgate rules and regulations * * * which * * * shall prescribe * * * the conditions under which racing shall be permitted in the fairgrounds and the rules governing the same." Ill. Rev. Stat. 1963, ch. 127, par. 40, subpar. 16.

Among the requirements for eligibility in the three-year-old pace in

1965 were prize additions totaling $250.00 and scheduled as follows: April 15—$25.00; June 15—$25.00; July 15—$100.00; and a final payment of $100.00 due forty-eight hours prior to the race. There was a change of ownership in Chicago King and the June 15 and July 15 payments were not made. The Director of Agriculture removed the name of Chicago King from the eligibility list. Somewhere around July 29, the owner of Chicago King contacted the Director of Agriculture indicating that they had missed two of the payments because they had received no notice and requested that their horse be reinstated and offered to pay whatever additional penalty "you feel is necessary for such reinstatement". On August 4, the Director reinstated Chicago King and sent to all other horse owners notification of that fact which stated "through inadvertence the name of the horse Chicago King was omitted from the eligible list sent to you and the Department of Agriculture has placed said horse on the eligibility list effective immediately". On August 6, the owner of Chicago King forwarded a check to the Department for the full balance due in fees. On August 16, the race was run and that morning a protest was filed by another entrant which stated "the three-year-old colt, Chicago King, was not listed in the list of eligible colts. Want proof that this colt's payments were made on time". At the time, therefore, that the race was run and for that matter some ten days prior thereto Chicago King was not in default in the total payments required for eligibility to race.

Under Ill. Rev. Stat. 1963, ch. 8, par. 37, it became the duty of the Department of Agriculture to promote the races mentioned in that section (including the three-year-old pace) and it states: "All prize additions collected from entrants shall be held by the Director of the Department of Agriculture, ex-officio, as custodian for the benefit of entrants and shall be paid out as part of the respective purses for such races."

It should be noted from an examination of Ill. Rev. Stat. 1963, ch. 8, par. 37, and in the immediately succeeding paragraphs that there are many requirements for eligibility and whether or not these requirements are met is determined by the Director of the Departmnt of Agriculture or the investigators appointed by the Governor under § 20b of the same statute. It is further provided in that statute that the Department of Agriculture "may adopt reasonable rules and regulations not inconsistent with the provisions of this Act." It does not appear from this record that any other or different regulations were adopted by the Department of Agriculture. One of the conditions of the race was "if any condition arises not covered by these conditions, the Department of Agriculture reserves the right to decide any question. All entrants agree to abide by that decision."

This record further shows that there were several horses for whom either the first or second payment was made. They were dropped as ineligible entrants by the Director of Agriculture. It was he who made that determination. It was he who made the determination that Chicago King could be reinstated under the facts shown in this record. It strikes us as a strange phenomenon that it can be argued that the Director of Agriculture has no authority to waive the late payment of the prize addition or reinstate and determine a colt eligible when under the statute the Department of Agriculture makes the determination of eligibility on all other counts. Irrespective of any reasons assigned by the Director, the fact remains that his order is unequivocal when it reads:

"* * * that the horse, Chicago King owned by Mr. Louis K. Kirsh, * * * be reinstated and that its name be placed on the list of eligible entrants in the category for which it qualifies upon the condition that past due eligibility payments be paid according to the conditions set out by the Illinois State Fair Colt Stakes. It is also ordered that the Office of the Division of State Fair notify all presently eligible entrants of the reinstatement of the horse, Chicago King."

Empress Farms met the conditions stated in that letter. It complied with the Director's order and paid the delinquent fees. In the face of the Director's order, his acceptance of the delinquent fees and his notice to all other entrants that Chicago King was reinstated (and thus eligible), we find ourselves hard put to hold that the Director did not have the power to make this determination and could not certify the eligibility of Chicago King.

All parties here were members of the United States Trotters Association and it is claimed and asserted that its rules control the Director and that by turning over the purse to the Trotting Association and permitting the horse to run under protest the Director was operating under the rules of that Association and this he was bound to do. The difficulty with this position is that the rule of the Association which is pleaded by the Director is not applicable to him. It reads:

"* * * every entry shall constitute an agreement that the person making it, the owner, lessee, manager, agent, nominator, driver, or other person having control of the horse, and the horse shall be subject to these rules and regulations, and will submit all disputes and questions arising out of such entry to the authority and judgment of this Association, whose decision shall be final."

It does not require a second reading of that rule to demonstrate that the Illinois Director of Agriculture is not included in any of the categories stated. It is likewise asserted that a rule of the Association states

"failure to make any payment required by the condition constitutes an automatic withdrawal from the event." It will be noted that this rule does not, strictly speaking, purport to cover a situation where the promoter of the race has accepted a late payment but has received all required payments forty-eight hours prior to the start of the race. Indeed it would appear that the circumstances here stated come within the proviso stated by the Director which was "if any condition arises not covered by these conditions, the Department of Agriculture reserves the right to decide any question. All entrants agree to abide by that decision * * *." It would seem that it is this proviso that should control. This being so, the Director was without authority to deliver this purse to the United States Trotting Association for their determination as to which horse was eligible and which horse won. The responsibility for determining eligibility was with the Director. He made that determination and permitted Chicago King to run. The post mortem delivery of the purse and the attempted transfer of responsibility for a determination of eligibility that he had already made was a nullity. Indeed, he does not complain of the trial court's order.

The United States Trotting Association was made a party-defendant on the motion of the Department of Agriculture. It filed its answer and a counterclaim for a declaratory judgment seeking a determination of the rights of the various parties in and to the fund. Although the trial court dismissed this counterclaim, it in effect did exactly what the Trotting Association requested, that is, made a determination of rights and found that Chicago King was lawfully entitled to the purse albeit contrary to the asserted claims of the Association. The Association has appeared in this cause and submitted its interest to the jurisdiction of the court, participated in the proceedings and has appealed. While *mandamus* is a writ directed to the performance of an official ministerial duty, the Association in effect brought the purse into jurisdiction of the court. It is a party-defendant. Accordingly, the order directing the Association to return the money to the Director of Agriculture is affirmed.

It being the statutory responsibility of the Director to hold this purse for the benefit of the entrants and it appearing that Chicago King was an entrant and was the winner of the race on the tract, there is nothing to be done other than to deliver that purse to Chicago King.

The judgment of the trial court is affirmed.

Judgment affirmed.

CRAVEN, J., concurs.

Mr. JUSTICE TRAPP, dissenting:

The opinion takes the position that the letter of the Director of Agriculture, dated August 4th, was a final determination that the horse was eligible to participate in the race.

The conclusion of the majority disregards all actions of the Director following the filing of the protest, *i.e.*, the racing of the third heat with an additional horse and the fact that the Director determined not to pay the purse to the owner of King. Finally, the pleadings filed in behalf of the Director deny that the horse was the winner.

It is to be concluded from the record that the protest of eligibility was timely filed on the day of the race as the notice to the other entrants simply stated that "through inadvertence" the name of the horse had been omitted from the list.

It is clear that as of August 4th, the Director had not made any final determination of eligibility in the light of the protest filed by the other owners. His subsequent actions are essentially consistent with the conclusion that following the protested race the Director determined that there was a failure to comply with the rules and that the horse, King, was not a winner.

It is clear that the announced conditions of the race were the rules of the Association and that such rules provided that in the event of a protest at the start of the race, the judges, in the absence of evidence which would exclude a horse, should permit the horse to race and subsequently transfer the prize to the hearing procedures of the Association for final determination. The record shows that all parties submitted the case to the jurisdiction of the Association, proceeding both through hearing and review. There was no challenge of the procedure until the decision was adverse to this horse.

It is held that the Director could not follow the rules of the Association because they had not been filed with the Secretary of State as "Rules" of the Department of Agriculture. Ch. 127, par. 263 through 266. Paragraph 264 defines a "Rule" as a matter of general application to implement or make specific the law administered, but specifically excludes matters not generally affecting the rights or procedures available to the public. It is very doubtful that the "conditions of the race" generally affect the rights or procedures available to the public, but even if it be assumed that the statute applies, the published conditions of the race provided: "If any condition arises not covered by these conditions, the Department of Agriculture reserves the right to decide any question." It seems apparent that the filing of a protest of eligibility of the horse is such a condition contemplated by this provision. The record clearly shows no decision of the Director following the race held under protest. By such stated terms,

if the Director was not bound to permit the Association to determine the winner of the protest race, he was bound to make the determination himself.

The Association is more than a mere stakeholder. Upon the evidence, it is a responsible organization which pursuant to rules and contracts with its members held out to them with official sanction, however mistaken, a procedure for settling grievances in respect to the race. Having received the fund under conditions of trust, it is fair and just that in disposing of the fund it may rightfully assert on behalf of its members that appropriate officials make a decision upon the questioned race.

While *mandamus* may not compel an official to exercise his discretion in a specified manner, it is proper to direct such official to proceed with the exercise of his discretion. *People ex rel. McGrady v. Carmody,* 104 Ill.App.2d 137; 243 N.E.2d 19.

I would reverse the order of the trial court that the Director pay the prize money to the petitioner, and remand with directions that the court order the funds held by the Association be paid to the Director and that he proceed to determine the winner of the race and the proper disposition of the prize money.